```
                                                          FILED
                                                     U.S. DISTRICT COURT
                                                        AUGUSTA DIV.
```

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

2006 JAN 12 PM 3: 46

AUGUSTA DIVISION

CLERK_____
  SO. DIST. OF GA.

| | |
|---|---|
| SHARON B. ELLISON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 105-204 |
| ) | |
| BOARD OF REGENTS OF THE ) | |
| UNIVERSITY SYSTEM OF GEORGIA, ) | |
| CORLIS P. CUMMINGS, TIMOTHY ) | |
| SHELLNUT, HUE A. CARTER, JR., ) | |
| CONNIE CATER, WILLIAM H. ) | |
| CLEVELAND, MICHAEL J. COLES, ) | |
| JOE FRANK HARRIS, JULIE EWING ) | |
| HUNT, W. MANSFIELD JENNINGS, ) | |
| JAMES R. JOLLY, DONALD M. ) | |
| LEEBERN, ELRIDGE MCMILLAN, ) | |
| MARTIN W. NESMITH, PATRICK S. ) | |
| PITTARD, DOREEN STILES POITEVINT,) | |
| WANDA YANCEY RODWELL, ) | |
| RICHARD L. TUCKER, ALLAN ) | |
| VIGIL, JOEL O. WOOTEN, ) | |
| ) | |
| Defendants. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff filed the above-captioned case pro se and sought leave to proceed *in forma pauperis* ("IFP"). The Court granted her leave to proceed IFP in a separate Order.

In cases where a plaintiff is proceeding IFP, the Court is required to dismiss the plaintiff's complaint if it determines that the action is frivolous or malicious or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(i) & (ii). Recognizing

that pro se complaints should be construed liberally, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam), the Court will now review plaintiff's complaint to determine whether it states a claim on which relief may be granted.

I.  **BACKGROUND**

Plaintiff was admitted to Augusta State University ("ASU") as a "Learning Support" student. Learning Support students may be dismissed from school for "not completing an area of Learning Support within three attempts, or not completing the non-exit level course in an area of Learning Support in two attempts." Compl. at 1.

According to plaintiff, the ASU Learning Support department notified her on December 12, 2005, that she had not successfully completed "MATH 0096" in two attempts. As such, she would become "Learning Support Ineligible" and not be eligible to participate in the Learning Support program at any University System of Georgia institute for three years. Compl. at 3.

According to plaintiff, Learning Support requirements place "a significant burden upon the student to learn at a pace that is unnecessarily fast," "block a substantial amount of education that is important and constitutionally or lawfully protected," "fail to advance a compelling or substantial governmental or universal interest," "provide for the suppression of education on the basis of determinations made by persons who may have their own personal bias of some minority group of people, while under color of official position," "vest University Staff and Board of Regents of the University System of Georgia Staff with unfettered and unreviewable discretion to suspend students in Learning Support who have

not completed an area of Learning Support within two-three attempts," are "unconstitutionally vague," and "violate the University's own goal and policy to educate." Compl. at 7, 8. Plaintiff also asserts that "[t]he effect of the Policy is to reduce African Americans and other minorities accessing the education department of the University System to even less than the percentage already accepted." Compl. at 7. Plaintiff seeks relief under Title 42, United States Code, Section 1983 for substantive due process and equal protection violations.

## II.  DISCUSSION

### A. Substantive Due Process

Implicit in plaintiff's Section 1983 claim is the presumption that a college student's interest in continuing her college education is protected by substantive due process. Substantive due process rights arise from the Constitution and are so fundamental as to be "implicit in the concept of ordered liberty." Palko v. Connecticut, 302 U.S. 319, 325 (1937). No court has recognized a substantive property or liberty interest in a college education. Courts instead have observed that "concerns of federalism, judicial capacity, and academic freedom counsel against the recognition of such an interest." Bell v. Ohio State Univ., 351 F.3d 240, 251 n.2 (6th Cir. 2003); see Regents of Univ. of Michigan v. Ewing, 474 U.S. 214, 226 (1985) (expressing "reluctance to trench on the prerogatives of state and local educational institutions and our responsibility to safeguard their academic freedom, 'a special concern of the First Amendment'" (citations omitted)).

If the Court assumes, *arguendo*, that a substantive due process right to a college

3

education exists, plaintiff must show that her academic dismissal was the result of arbitrary and capricious conduct on the part of college officials. Hines v. Rinker, 667 F.2d 699, 703 (8th Cir. 1981). "To establish such arbitrary and capricious action, the plaintiff must show that there is no rational basis for the university's decision, or that the decision to dismiss was motivated by bad faith or ill will unrelated to academic performance." Id. (citations omitted). Courts have accorded deference to dismissals based on academic, rather than disciplinary, reasons. According to the Supreme Court,

> [w]hen judges are asked to review the substance of a genuinely academic decision . . . they should show great respect for the faculty's professional judgment. Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.

Ewing, 474 U.S. at 225. Such deference to academic dismissals is based on the notion that courts "are ill-equipped to evaluate academic performance." Board of Curators of Univ. of Missouri v. Horowitz, 435 U.S. 78, 91-92 (1978).

Plaintiff here alleges no arbitrary or capricious conduct on the part of ASU officials in her dismissal. In fact, it does not appear that any ASU official involved in academic instruction or grading is named in her complaint. Instead, plaintiff challenges the state-imposed policy under which she was dismissed.

Courts have long recognized, however, the autonomy that should be afforded an academic institution in implementing policy affecting the composition of its student body. "The freedom of a university to make its own judgments as to education includes the selection of its student body." Regents of Univ. of Michigan v. Bakke, 438 U.S. 265, 312 (1978); accord Grutter v. Bollinger, 539 U.S. 306, 329 (2003). "It is the business of a

university to provide that atmosphere which is most conducive to speculation, experiment and creation. It is an atmosphere in which there prevail 'the four essential freedoms' of a university–to determine for itself on academic grounds who may teach, what may be taught, how it shall be taught, and *who may be admitted to study*." Sweezy v. New Hampshire, 354 U.S. 234, 263 (1957) (Frankfurter, J., concurring) (emphasis added).

While the Court is not disposed to offer opinions concerning the wisdom or efficacy of an academic policy, the policy that plaintiff challenges in this case, which mandates a level of academic competence for ASU students, is well within the parameters of an academic institution's constitutional prerogative to determine the composition of its student body. As such, the policy resulting in plaintiff's dismissal and inability to re-enroll in Learning Support for three years does not give rise to substantive due process concerns. Because plaintiff does not allege that her dismissal was the result of any arbitrary or capricious conduct on the part of individual ASU officials, her substantive due process rights, if any exist in this context, have not been violated.[1]

---

[1] Plaintiff does not allege in her complaint that she was not afforded procedural due process in her dismissal. While some courts have recognized procedural due process rights in disciplinary dismissals, courts have been reluctant to expand those rights to dismissals for academic performance. See, e.g., Horotwitz, 435 U.S. at 87 (recognizing "there are distinct differences between decisions to suspend or dismiss a student for disciplinary purposes and similar actions taken for academic reasons which may call for hearings in connection with the former but not the latter" and refusing to require hearings for academic dismissals). The Fifth Circuit, in precedent now binding on the Eleventh Circuit, found "a clear dichotomy between a student's due process rights in disciplinary dismissals and in academic dismissals." Mahavongsanan v. Hall, 529 F.2d 448, 450 (5th Cir. 1976).

Plaintiff here appears, from the context of her complaint, to have been well aware of the requirements of the Learning Support program and the potential consequences of her failure to complete course requirements. Even if she were to have asserted procedural due process violations in her complaint, she has not alleged facts sufficient to support such a

### B. Equal Protection

The Court liberally construes the remainder of plaintiff's complaint as an argument that the policy leading to her dismissal from ASU constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment. E.g., Compl. at 7 ("The effect of the Policy is to reduce African Americans and or other minorities accessing the education department of the University System to even less than the percentage already accepted."). Plaintiff, however, has not alleged that she was treated differently from similarly situated students because of her race, which is required in a valid Fourteenth Amendment claim. See Bell, 351 F.3d at 252 (rejecting Fourteenth Amendment claim where plaintiff did not allege that she was treated differently than similarly situated individuals because of her race). In fact, plaintiff states that the policy was implemented indiscriminately, "without exception or individual choice." Compl. at 2.

Plaintiff also may not rely on allegations of disparate impact resulting from the school policy, as such allegations alone are insufficient to sustain an Equal Protection claim. The Supreme Court has "not embraced the proposition that a law or other official act, without regard to whether it reflects a racially discriminatory purpose, is unconstitutional solely because it has a racially disproportionate impact." Washington v. Davis, 426 U.S. 229, 238 (1976). Instead, a plaintiff must show a racially discriminatory purpose in the enactment of a law or policy. The policy at issue appears facially neutral, and, according to plaintiff, it is being applied in a racially neutral manner. Because plaintiff does not allege that she was treated differently under the policy from similarly situated individuals of a different race, and

---

claim.

because the policy appears racially neutral on its face, she cannot proceed with an Equal Protection claim.[2]

### III. CONCLUSION

Plaintiff fails to allege facts in her complaint, even if liberally construed, under which Section 1983 or Fourteenth Amendment relief may be granted. Accordingly, the Court **REPORTS** and **RECOMMENDS** that the complaint be **DISMISSED** and this civil action be **CLOSED**.

SO REPORTED AND RECOMMENDED on this 12th day of January, 2006, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[2] Plaintiff likewise cannot proceed in a discrimination claim under Title 42, United States Code, Section 1981 under the facts alleged in her complaint. To establish a prima facie claim of discrimination, plaintiff must allege, *inter alia*, that "she was treated differently from similarly situated students who are not members of the protected class." Bell, 351 F.3d at 253. Plaintiff makes no such allegation, and presents facts supporting no such allegation, in her complaint.